UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO FLORES, et al., | No.  2:25-cv-01388-DAD-SCR |
| Plaintiffs, | |
| v. | ORDER DENYING PLAINTIFFS' MOTION TO REMAND |
| WALGREEN CO., | (Doc. No. 8) |
| Defendant. | |

This matter is before the court on plaintiffs' motion to remand this action to Yolo County Superior Court, filed on June 13, 2025.  (Doc. No. 8.)  The pending motion was taken under submission on the papers.  (Doc. No. 11.)  For the reasons explained below, plaintiffs' motion to remand will be denied.

**BACKGROUND**

On April 3, 2025, plaintiff Alejandro Flores, on behalf of himself and all others similarly situated, filed a complaint initiating this putative class action in the Yolo County Superior Court against defendant Walgreen Co. and Does 1–50.  (Doc. No. 1-1 at 8.)  On May 2, 2025, plaintiff Flores filed a first amended complaint ("FAC") joining plaintiffs Juan Santos and Lizette Farias.  (Doc. No. 1-1 at 59.)  In their FAC, plaintiffs allege as follows.

With regard to plaintiffs' minimum wage claim, "DEFENDANT's unlawful wage and hour practices manifested, without limitation, applicable [sic] to the CALIFORNIA LABOR

1

SUB-CLASS as a whole, as a result of implementing a policy and practice that denies accurate compensation to PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS in regards to minimum wage pay." (*Id.* at ¶ 71.) As to plaintiffs' failure to pay wages when due claim, "[t]he employment of Plaintiff Flores and Plaintiff Farias and many CALIFORNIA LABOR SUB-CLASS Members has terminated and DEFENDANT has not tendered payment of all wages owed as required by law." (*Id.* at ¶ 115.) The California Labor Subclass Period is defined by plaintiffs as "any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court." (*Id.* at ¶ 42.)

Based on these and other allegations, plaintiffs assert the following causes of action: (1) violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*; (2) failure to pay all minimum wages in violation of California Labor Code §§ 1194, 1197, 1197.1; (3) failure to pay all overtime wages in violation of California Labor Code §§ 510, 1198; (4) failure to provide meal periods and pay missed meal period premiums in violation of California Labor Code §§ 226.7, 512(a); (5) failure to provide rest periods and pay missed rest period premiums in violation of California Labor Code § 226.7; (6) failure to furnish accurate itemized wage statements in violation of California Labor Code § 226(a); (7) failure to reimburse business expenses in violation of California Labor Code §§ 2800, 2802; (8) failure to pay wages when due in violation of California Labor Code §§ 201, 202, 203; (9) failure to pay sick pay wages in violation of California Labor Code §§ 201, 202, 203, 233, 246; and (10) failure to comply with California quota laws in violation of California Labor Code § 2100. (*Id.* at ¶¶ 51–122.)

On May 15, 2025, defendant removed the action to this federal court pursuant to 28 U.S.C. §§ 1332(d), 1453, and 1711 on the grounds that this court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). (Doc. No. 1.) On June 13, 2025, plaintiffs filed the pending motion to remand this action to the Yolo County Superior Court. (Doc. No. 8.) On June

/////

/////

/////

27, 2025, defendant filed its opposition to the pending motion and a request for judicial notice.[1] (Doc. Nos. 9, 10.)  On July 7, 2025, plaintiffs filed their reply thereto.  (Doc. No. 13.)

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ."  *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court."  *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee*, 574 U.S. at 89.  However, "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case."  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

/////

/////

---

[1]  Because in resolving plaintiffs' pending motion to remand the court need not consider the documents listed in defendant's request for judicial notice (Doc. No. 10), that request is denied as having been rendered moot.  *See Langer v. Music City Hotel LP*, No. 21-cv-04159-PJH, 2021 WL 5919825, at *5 (N.D. Cal. Dec. 15, 2021) ("The court does not consider this exhibit in deciding this motion, and it therefore denies as moot the request for judicial notice of the exhibit.").

**ANALYSIS**

Defendant removed this putative class action pursuant to CAFA, arguing that there is minimal diversity, the putative class exceeds 100 members, and the amount in controversy exceeds $5 million.  (Doc. No. 1.)  In their motion to remand, plaintiffs argue that CAFA is not satisfied because defendant has failed to meet its burden of establishing that the amount in controversy here exceeds $5 million.  (Doc. No. 8.)  In its opposition, defendant argues that the requirements of CAFA are satisfied because the amount in controversy is greater than $5 million.  (Doc. No. 9.)

Defendant calculates the amount in controversy for purposes of plaintiffs' waiting time claim to be $5,528,839.68.  (*Id.* at 7.)  In reaching this figure, defendant assumes that all class members terminated by January 30, 2025 (over 63 days before plaintiffs filed their complaint) are seeking a full 30 days of waiting time.  (Doc. Nos. 1-1 at 8; 9 at 7; 9-1 at 4.)  Defendant also offers a declaration from Ms. Maxime Joly, a consultant with expertise in assessing potential liability, who reviewed various spreadsheets comprised of timekeeping and payroll data received from defendant pertaining to current and former employees who have worked for defendant since April 3, 2021.  (Doc. No. 9-1 at 2.)  She concluded based on her review of the records that 1,172 class members were terminated by January 30, 2025, they had an average shift length of 7.8 hours, and the average final base rate for these employees was approximately $20.16.[2]  (*Id.* at 4.)

Plaintiffs argue that the court should accept their allegation that the amount in controversy is below $5 million.  (Doc. No. 9 at 3.)  As to waiting time penalties specifically, plaintiffs argue that defendant's assumption that all terminated class members are owed waiting time penalties is unreasonable given that the FAC uses the modifier "many" when discussing who is owed waiting time penalties.  (Doc. No. 13 at 11.)  Plaintiffs further argue that defendant fails to support its assumption that each employee is owed the maximum 30 days in waiting time penalties.  (*Id.* at

/////

---

[2]  Defendant then calculated the waiting time penalties using the following formula:  1,172 (class members terminated by January 30, 2025) * $20.16 (those employees' average final base rate of pay) * 7.8 hours (those employees' average shift length) * 30 days (number of days of waiting time penalties owed per person) = $5,528,839.68.

12.)  Finally, plaintiffs argue that defendant fails to support its conclusion that all terminated class members worked exactly 7.8 hours per day.  (*Id.*)

Of course, plaintiffs' allegation that the amount in controversy does not exceed $5 million "does not resolve the amount-in-controversy question[.]"  *Standard Fire*, 568 U.S. at 596 (finding that the plaintiff's inclusion of a stipulation in the complaint promising that the class will seek damages of less than $5 million did "not resolve the amount-in-controversy question in light of [the plaintiff's] inability to bind the rest of the class.").

As to waiting time penalties specifically, plaintiffs attempt to limit the number of terminated class members owed waiting time penalties by using the modifier "many" in the FAC.  (Doc. No. 1-1 at ¶ 115.)  However, plaintiffs do not modify or limit in any way the number of class members allegedly deprived of minimum wage, instead alleging that the "unlawful wage and hour practices[,]" which deprived employees of minimum wage, applied "without limitation . . . to the CALIFORNIA LABOR SUB-CLASS as a whole[.]"  (Doc. No. 1-1 at ¶ 71.)  Failure to pay minimum wages "entitles class members to waiting time penalties."  *McGrath v. All Med. Pers., Inc*, No. 2:23-cv-05181-SB-PVC, 2023 WL 5507175, at *3 (C.D. Cal. Aug. 25, 2023) ("The 'very nature' of a wage-and-hour class action 'requires Plaintiff to allege that putative class members have not received all wages owed in violation of the law.'").  "Moreover, even if [p]laintiff[s] could expressly disavow [their] own ability to recover waiting time penalties" flowing from defendant's alleged failure to pay minimum wages, "such disavowal would not bind the other putative members of the class."  *Id.* (citing *Standard Fire*, 568 U.S. at 592–93).  Finally, the inclusion of the term "many" in plaintiffs' FAC could just as easily refer to the fact that not all California Labor Sub-Class members have been terminated, as would be required to obtain waiting time penalties.  (Doc. No. 1-1 at ¶ 115) ("The employment of PLAINTIFF and many CALIFORNIA LABOR SUBCLASS Members has terminated and DEFENDANT has not tendered payment of all wages owed as required by law.").  Therefore, defendant's assumption that all California Labor Subclass Members terminated before January 30, 2025, are owed waiting time penalties is a reasonable one.  *See Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir.

/////

5

2025) ("But an assumption is not unreasonable simply because another equally valid assumption may exist.").

Plaintiff's next argument, that defendant has failed to support its use of the maximum 30 days in waiting time penalties, is similarly without merit. The Ninth Circuit has specifically rejected the view that the defendant must provide evidence to support the use of a maximum 30 days in waiting time penalties under circumstances where that assumption was reasonable. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993–94 (9th Cir. 2022). "Since the lawsuit alleges violations that remain unremedied at the time of filing, a class member terminated more than 30 days before the filing of a lawsuit is entitled to the full 30-day penalty." *McGrath*, 2023 WL 5507175, at *3; (Doc. No. 1-1 at ¶ 42) (defining the California Labor Subclass Period as "any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court"). Because defendant includes only those class members terminated by January 30, 2025, 63 days prior to the filing of the complaint, defendant's assumption that each of these terminated class members are owed the full 30 days in waiting time penalties is reasonable here.

Finally, plaintiff argues that defendant fails to support the conclusion that each terminated class member worked exactly 7.8 hours per day. Defendant makes no such claim. Instead, it offers evidence in support of the conclusion that the terminated class members worked an average shift length of 7.8 hours. (Doc. No. 9-1 at 4.) Courts consistently accept the use of average shift length and average hourly pay in calculating the average daily pay rate for purposes of determining the amount in controversy for waiting time penalties. *See Chan v. Panera, LLC*, No. 2:23-cv-04194-JLS-AFM, 2023 WL 6367677, at *4 (C.D. Cal. Sept. 28, 2023) (faulting the defendant for failing to calculate "average shift length at the same time that it calculated average pay" in order to "use[] that reasoned calculation in determining the daily pay rate" for purposes of calculating the amount in controversy for waiting time penalties). Because defendant's calculation that the amount in controversy regarding waiting timing penalties is over $5 million, the court need not consider the parties' arguments regarding the amount in controversy as to plaintiffs' remaining claims.

**CONCLUSION**

For all of the reasons explained above, plaintiffs' motion to remand (Doc. No. 8) is DENIED.

IT IS SO ORDERED.

Dated:   **March 3, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

7